# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ELIAS GARCIA-MORENO,<br><br>    Plaintiff,<br><br>vs.<br><br>GREAT-WEST LIFE AND ANNUITY INSURANCE CO., a Colorado corporation, and its Subsidiary, ALTA HEALTH & LIFE INSURANCE CO., a Colorado corporation,<br><br>    Defendants. | No. C05-4017-PAZ<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

_____

      This is an action to recover life insurance benefits under an ERISA plan. The plaintiff claims his son was a participant in the ERISA plan, and purchased life insurance under the plan naming his father as the beneficiary. The plaintiff further claims his son died, and as the beneficiary of the life insurance, he is entitled to insurance proceeds in the amount of $15,000. The defendants claim they were not provided with sufficient evidence to establish that the plaintiff's son worked for the company or that the worker whom the plaintiff claims was his son is dead.

      The ERISA plan at issue ("the Plan") was established for the benefit of employees of Tur-Pak Foods, Inc. of Sioux City, Iowa ("Tur-Pak"). The defendant Alta Health & Life Insurance Company ("Alta") provided life insurance benefits under the Plan. The defendant Great-West Life and Annuity Insurance Co. ("Great West"), Alta's parent company, was the Plan administrator.

      An employee of Tur-Pak known to the company as Juan Alberto Chavez ("Chavez") enrolled in the Plan effective May 1, 2003. On the enrollment form, "Chavez" listed his

Social Security Number as XXX-XX-2240, and his date of birth as September 30, 1980. Chavez named "Elias Garcia," described on the form as his "frend [sic]," as his beneficiary.

The plaintiff Elias Garcia-Moreno ("Garcia-Moreno") was the father of Orlando Garcia. On October 22, 2003, Garcia-Moreno filed a claim under the Plan for $15,000 in life insurance benefits arising from the death of Orlando Garcia. On the "Life Claim Report" form, Garcia-Moreno stated his son was known to Tur-Pak as "Juan Alberto Chavez." Great-West's records indicated a "Juan Chavez" was eligible for a $15,000 life insurance benefit. Garcia-Moreno stated his son had died on June 19, 2004. On the form, Garcia-Moreno listed his son's Social Security Number as XXX-XX-1394, and his son's date of birth as January 18, 1980.

On November 14, 2003, Garcia-Moreno sent Great-West a Certificate of Death which reflected that his son Orlando Garcia was born on January 18, 1980, and died from "ligature strangulation by hanging" in Woodbury County, Iowa, on June 19, 2003. According to the Certificate, Orlando Garcia had no Social Security number and he was twenty-three years old at the time of his death. The decedent's body had been sent to Mexico for burial. On the Certificate, the decedent's father was listed as "Elias Garcia."

On November 21, 2003, Casey Sierota, a Senior Claims Examiner with Great-West, wrote the following to Nathan Phipps, the HR Manager at Tur-Pak:

> We regret to learn of the death of Mr. Chavez[] and wish to express our sincere condolences to his family and friends.
>
> This claim will be reviewed within the next two weeks. It was noted upon receipt of the claim that the enrollment/beneficiary form was not enclosed. We would appreciate your sending this form for our review. You will be notified if any further information is needed. If you have any questions, please contact me at [phone number].

In a claim note dated December 1, 2003, Sierota wrote the following:

> [The death claim] is for Orlando Garcia whose DOB was 1/18/80. Claim form is for Juan Chavez, DOB 1/18/80.[1] Document copies were sent under both names with pictures similar enough to indicate this is the same person. No [enrollment form] sent to us but requested from [Tur-Pak] in the 10-day letter. The Member Information screen however, offers Juan Chavez's DOB as 9/30/80. When [the enrollment form] arrives, will check the birth date on form and request affidavit from [Phipps] that states their employee's actual name was Orlando Garcia.[2] Discussed this with Carrol Lone who agreed this is the same person and directed to pay.

In a claim note dated December 1, 2003, Sierota wrote, "Rec'd orig [enrollment form] from [Tur-Pak]. As the names are different and birth dates are different, wrote to [Tur-Pak] requesting a notarized affidavit from him regarding the name."

In a claim note dated December 18, 2003, Sierota wrote the following:

> Rec'd [telephone call] from [Phipps]. He said he thinks his [employee] is the same person as the man who died, but he cannot be sure. After the death, several [employees] started a collection in the lunchroom for the family of the deceased and the sign they put up had the name of the DC (Orlando Garcia) rather than the name he knew the [employee] by (Juan Chavez). He is not comfortable, however, with offering an affidavit that this is the same person as he is not positive. He said he would write a letter expressing everything he's said in this phone call, but would not give an affidavit or request that we pay the claim. He would rather we deny the claim as he is

---

[1] In a later version of the claim note in the administrative file, the second "1/18/80" date in the note is scratched out and changed to "9-30-1980." This change is consistent with the information concerning "Juan Chavez" on the enrollment form, but not with the information on the claim form. The date September 30, 1980, appears nowhere on the claim form.

[2] Carrol Lone is the Assistant Manager, Group Life Claims.

3

afraid it might set a precedent with workers when a family member dies, they will claim it was the employee, collect the insurance and move back to Mexico. Will wait for this letter and then deny claim.

On December 5, 2003, Sierota wrote the following to Phipps:

> Thank you for sending us the enrollment form for Mr. Chavez. As I'm sure you are aware, we have an issue with this claim regarding the identity of the deceased. All of the employment documents refer to Juan Chavez whose birth date was September 30, 1980. The death certificate, however, is in the name or Orlando Garcia whose date of birth was January 18, 1980. The beneficiary named on the enrollment form is Elias Garcia whose relationship to Juan Chavez was given as "friend," while the death certificate states Elias Garcia was Orlando's father.
>
> If we are to pay this claim, we must have a notarized affidavit on which you state that your employee Juan Chavez's true name was Orlando Garcia and that these two identities belong to the same man. If you have any questions, please contact me. . . .

In a claim note dated January 7, 2004, Sierota wrote, "[Phipps]'s letter has not arrived. Apparently he changed his mind about putting anything in writing. Will go ahead and deny claim, sending referral to Carrol Lone."

In an internal memo dated January 8, 2004, Sierota wrote the following to Carrol Lone:

> Employee enrolled as Juan Chavez. Death Certificate is for Orlando Garcia. We have no documents that prove these identities belong to the same person. Spoke to the employer who said he thinks they're the same, but is not sure enough to sign an affidavit. In fact, he would be more comfortable with our denying the claim. He is afraid this might be a case where a family member died and they're claiming the insurance benefits under the employee's name and the employee is

4

> returning to Mexico with the money. He does not want to set a precedent as he has a lot of Mexican workers whose families are here with them. He said no one in management went to the funeral, so they can't be sure it was their employee who died.

Despite this note, the administrative file contains an undated[3] affidavit directed to Sierota and signed by Phipps stating the following:

> Juan Chavez (XXX-XX-2240) was an employee from 4/10/02 until 6/20/03 when he had been a No Call No Show for the week. Other employees told me that he had hung himself the prior weekend. There was a coffee can in our cafeteria with his picture looking for donations to help cover expenses with the name of Orlando Garcia on the can. Hourly employees of Tur-Pak set this up. I believe that Juan Chavez and Orlando Garcia is [are] the same person but I do not have any first hand information to verify this. If you have any questions feel free to call me at [phone number].

In a handwritten note dated January 12, 2004, on the bottom of the January 8, 2004, memo, Lone wrote, "Agree, we do not have proof of death for Juan Chavez."

On January 9, 2004, Sierota wrote the following letter to Garcia-Moreno:

> We regret to learn of the death of Mr. Garcia and wish to express our sincere condolences to his family and friends.
>
> The employee insured for Life Insurance under this Plan was Juan Chavez whose birth date was September 30, 1980. His Social Security Number was XXX-XX-2240. He listed his beneficiary as Elias Garcia whose relationship to him was "friend". The death certificate we received is for Orlando Garcia whose date of birth was January 18, 1980. A Social Security Number was not given. Both the death certificate and the claim form state that Elias Garcia was his father.

---

[3] In the lower right-hand corner of the affidavit is a January 13, 2004, date-stamp.

> As none of the documents received contain the same information, we have no assurance that Orlando Garcia was the same person as the employee of Tur-Pak Foods, Inc. who was known to them as Juan Chavez. As we are unable to determine that Orlando Garcia did, in fact, work for Tur-Pak Foods and was insured through their Plan, we regret that we are unable to pay any Life Insurance benefit.
>
> If you do not agree with this determination and wish to appeal, the Employee Retirement Income Security Act (ERISA) requires that you formally appeal our denial in writing within 60 days from the date you received this letter. The appeal must state the reasons you feel the claim should not have been denied and include any documents not previously provided, including documentation which supports the beneficiary's claim that Juan Chavez and Orlando Garcia were the same person, and other information to show the plan provisions have been adhered to. If you desire to pursue an appeal, please be advised that you are entitled to review the pertinent documents upon which this decision was based. Upon request and free of charge, copies of all documents relevant to this claim will be provided to you.
>
> Your appeal will be processed within 60 days of the date the request is received. If a decision cannot be made within the initial 60 days period, because of circumstances beyond our control, we will notify you in writing of the reasons for the delay and the specific date that we expect to make a claim decision.

On January 12, 2004, a computer "person search" was performed by Great-West, and it was determined that Juan A. Chavez, date of birth September 30, 1980, Social Security Number XXX-XX-2240, was alive and living at an address in Soledad, California.

On February 16, 2004, attorney Dennis M. McElwain sent a representation letter to Alta appealing the denial of the claim and requesting a copy of the administrative file.

In the letter, McElwain state, "Once we receive your response, we will determine what if any further documents will be submitted to you." On March 19, 2004, Great-West sent McElwain a letter enclosing the Certificate of Death for Orlando Garcia, the Life Claim Report sent to Great-West by Tur-Pak, and the Enrollment Card completed by "Juan A. Chavez." In the letter, Great-West stated, "From the [enclosed] documents we have no proof that Juan A. Chavez is one and the same person as the deceased Orlando Garcia and must maintain our denial of this life insurance benefit." Great-West concluded the letter by advising McElwain of his right to seek a second review within 60 days, stating, "This appeal must include certified proof that Orlando Garcia and Juan Chavez are one and the same person and certified proof that Juan Chavez, our insured, died."

On December 14, 2004, attorney Jay M. Smith from McElwain's office sent Great-West and Alta a letter enclosing a copy of a suit papers. In the letter, Smith stated he was prepared to file the lawsuit if the case was not settled by December 17, 2004. On December 16, 2004, Sharon A. Riley, Associate Counsel for Great-West, wrote the following letter to Smith:

> We are in receipt of your December 14, 2004 correspondence and attached Complaint. . . . Despite the allegations set forth in the Complaint, Great-West's decision to deny your client's claim was proper.
>
> First, as reflected on the enclosed Beneficiary Designation Form, Juan Chavez's date of birth is September 30, 1980 and his social security number is XXX-XX-2240. The Beneficiary Designation Form does not indicate an alias or secondary name of "Orlando Garcia." However, the death certificate provided by your client indicates the death of an individual by the name of "Orlando Garcia," with a date of birth of January 18, 1980. Moreover, the certificate does not include a social security number to compare to the social security listed on the Beneficiary Designation Form. As such,

7

> there is insufficient evidence to demonstrate that the individual reflected on the death certificate (Orlando Garcia) is in fact, the member insured under the Tur-Pak Foods employee benefit plan ("the Plan") administered by Great-West (Juan Chavez).
>
> In addition, Great-West conducted an investigation of this claim, which revealed that Juan Chavez, with a date of birth of September 30, 1980 and a social security number of XXX-XX-2240 was still alive and last residing in California. We also compared a photograph of Orlando Garcia, with the date of birth of January 18, 1980, to a photograph of the Juan Chavez who was employed with Tur-Pak Foods. As you can see, the photographs are not of the same person.
>
> Finally, Mr. Chavez designated his beneficiary as "Elias Garcia" and indicated his relationship to Mr. Garcia as "friend." . . . Therefore, even if it was proven that Juan Chavez is the same deceased individual identified in the death certificate by the name of Orlando Garcia, there is no evidence that your client is the intended beneficiary. Pursuant to the death certificate, Elias Garcia is the <u>father</u> of Orlando Garcia, and the Beneficiary Designation Form would have indicated as such. Based on these facts, Great-West properly denied Mr. Garcia's claim for life insurance proceeds.
>
> Great-West is willing to re-evaluate your claim prior to the filing of the lawsuit if additional information is provided. Therefore, we ask that you submit any and all information and documentation that can prove that the individual identified in the death certificate as Orlando Garcia is, in fact, the individual covered under the Plan. Moreover, any information that can demonstrate that your client was the intended beneficiary would also [be] beneficial.

On January 25, 2005, Garcia-Moreno filed a petition in Woodbury County, Iowa, District Court seeking to recover death benefits from the defendants. The defendants removed the case to this court on February 7, 2005, and filed an answer on March 30, 2005. The parties consented to jurisdiction by a United States Magistrate Judge, and on

8

June 20, 2005, Chief Judge Mark W. Bennett filed an order transferring case to the undersigned.

On October 13, 2005, the defendants filed a motion for summary judgment, a statement of undisputed material facts, a supporting brief, and an appendix, which includes the administrative file. On November 17, 2005, Garcia-Moreno filed a resistance to the motion, with a supporting brief, a statement of material facts and response to defendants' statement of undisputed facts, and an affidavit of the plaintiff. On November 22, 2005, the defendants filed a reply brief.

The court heard telephonic arguments on the motion on November 29, 2005. David M. Swinton appeared for the defendants. MacDonald Smith appeared for Garcia-Moreno.

The court has considered the parties' submissions and arguments carefully, and turns now to discussion of the issues raised in the motion.

## *I. ANALYSIS*

### *A. Standards Applicable to Appeals of ERISA Claims to Federal Court*

Great-West is plan administrator of an ERISA plan established for the benefit of the employees of Tur-Pak. Great-West denied the plaintiff's claim for life insurance benefits under the Plan. "ERISA provides a plan beneficiary with the right to judicial review of a benefits determination." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) (citing 29 U.S.C. § 1132(a)(1)(B)). Under the terms of the Plan, Great-West is given discretion to determine eligibility for plan benefits. When a plan administrator is given such discretion, the court must review a decision by the administrator for abuse of discretion. *See id*. This deferential standard reflects a general hesitancy by the courts to

9

interfere with the administration of ERISA benefits plans. *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)

In *Hunt v. Metropolitan Life Insurance Co.*, 425 F.3d 489 (8th Cir. 2005), the court described this standard of review as follows:

> Because the plan gives [the plan administrator] discretion to determine eligibility, we review the administrator's decision for abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc). Under this standard of review, we consider whether the administrator adopted a "reasonable interpretation" of uncertain terms in the plan, and whether the administrator's decision was supported by substantial evidence, i.e.,"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *King*, 414 F.3d at 999 (internal quotation marks omitted).

*Id.*, at 490. "A plan administrator's interpretation of a plan does not constitute an abuse of discretion so long as it is 'reasonable,' even if the reviewing court disagrees with the interpretation." *Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program*, 424 F.3d 734, 738 (8th Cir. 2005) (citing *Neumann v. AT&T Communications, Inc.*, 376 F.3d 773, 781 (8th Cir. 2004)).

In *Smith v. UNUM Life Insurance Company of America*, 305 F.3d 789 (8th Cir. 2002), the court discussed application of the abuse of discretion standard, as follows:

> In applying an abuse of discretion standard, the reviewing court must affirm if a "reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002) (internal citation omitted). A reasonable decision is one based on substantial evidence that was actually before

> the plan administrator. *See Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996). Substantial evidence is "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). A reviewing court may consider both the quantity and quality of evidence before a plan administrator. *Donaho*, 74 F.3d at 900.

*Id*. at 794.

When considering a decision by a plan administrator to deny benefits under an ERISA plan,

> a reviewing court "must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales." *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999). Because ERISA requires employee benefit plans to "provide adequate notice" to any participant or beneficiary whose claim is denied, "setting forth the specific reasons for such denial" in a manner "calculated to be understood by the participant," 29 U.S.C. § 1133, we have held that plan trustees must "briefly state the facts of the case and the rationale for their decision," *Brumm v. Bert Bell NFL Retirement Plan*, 995 F.2d 1433, 1436 (8th Cir. 1993) (internal quotation omitted), and we have refused to allow claimants "to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998); *see also Short* [*v. Central States, Southeast and Southwest Areas Pension Fund*, 729 F.2d 567, 575 (8th Cir. 1984)]. In sum, an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator.

*King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 999-1000 (8th Cir. 2005) (en banc).

Thus, the court's task here is to decide whether Great-West's decision to deny life insurance benefits to the plaintiff, as justified in Great-West's communications sent to the plaintiff, was supported by substantial evidence in the administrative file.

### B. *The Merits of the Appeal*

On June 19, 2003, Orlando Garcia hanged himself in Woodbury County, Iowa. A Certificate of Death was prepared by the County Registrar of Vital Records, and his body was sent to a cemetery in Mexico for burial. Orlando's father, Elias Garcia, is the plaintiff in this case. On the day after Orlando Garcia hanged himself, a worker at Tur-Pak known as Juan Chavez failed to show up for work. Chavez's co-workers told management that he had hanged himself. A coffee can for donations, with the name "Orlando Garcia" on it, was placed next to a picture of "Juan Chavez" in the company cafeteria. On "Juan Chavez's" enrollment form for the ERISA plan at Sur-Pak, he named Elias Garcia, his "friend," as beneficiary. "Orlando Garcia" and "Juan Chavez" both were twenty-three years old.

After Elias Garcia submitted a claim for life insurance benefits for the death of his son, Nathan Phipps, the human resources manager at Tur-Pak, advised Great-West, the plan administrator, that Juan Chavez actually was Orlando Garcia. In claim notes written by Casey Sierota, an assistant claims examiner with Great-West, Sierota states that photographs of Juan Chavez and Orlando Garcia were "similar enough to indicate this is the same person." On December 1, 2003, Sierota discussed the matter with Carrol Lone, an assistant manager of Group Life Claims, and they "agreed this is the same person" and directed that the claim be paid.

All of the above facts are undisputed. In fact, they come directly from the defendants' administrative file. Despite the apparent favorable resolution of the claim, the

claim was denied. In a claim note date December 18, 2003, Sierota wrote that Phipps was "not comfortable" with providing an affidavit attesting to the fact that Juan Chavez actually was Orlando Garcia, but Phipps would write a letter instead. In the note, Sierota stated Phipps "would rather we deny the claim as he is afraid it might set a precedent with workers when a family member dies, they will claim it was the employee, collect the insurance and move back to Mexico. Will wait for this letter and then deny the claim." On January 7, 2004, Sierota wrote in another claim note that Phipps's letter had not arrived, so Sierota was going to "go ahead and deny the claim." Later, Sierota received an affidavit from Phipps.

From these facts, the only reasonable conclusion is that Orlando Garcia worked at Tur-Pak under the name of "Juan Chavez"; Chavez is a California resident and has a valid Social Security Number; Orlando Garcia used Chavez's Social Security Number and birth date to obtain employment; and he listed his father as the beneficiary of his life insurance policy, but on the paperwork identified his father as his "friend" to avoid having to explain the fact that his father was named "Garcia" and he was named "Chavez." Great-West realized this, and decided to pay the claim. Then Phipps, the human resource manager at Tur-Pak, became nervous and asked Great-West not to pay the claim. Phipps was afraid other Mexican workers would see this situation as an opportunity to defraud the company. Rather than face that possibility, Phipps and Great-West decided to deny the claim. Great-West performed an about-face, and denied the claim.

The defendants argue their decision to deny the plaintiff's claim was supported by substantial evidence. The defendants cite the following facts in support of their argument that a reasonable person could have reached the same decision:

> 1. The decedent listed in the death certificate had a different name than the enrollee.

13

  2. The decedent listed in the death certificate had a different date of birth than the enrollee.

  3. The claimant's name is not the same as that of the beneficiary identified in the enrollment form.

  4. The alleged relationship between the claimant and the decedent was not the same as that between the enrollee and the beneficiary identified in the enrollment form.

  5. An investigation disclosed the existence of a Juan Alberto Chavez who was still living in California with the same social security number as that listed in the enrollment form.

  6. The plaintiff never submitted any information in support of his contention that the decedent and the enrollee were the same person, despite having been invited to do so on three separate occasions prior to the filing of the lawsuit.

*See* Doc. No. 9-3, p. 6. These facts, taken together with the other evidence in the administrative file, only support the plaintiff's claim.[4]

From any reasonable interpretation of the evidence in the administrative file, there is only one possible explanation for what happened in this case. The employee who worked at Tur-Pak under the name "Juan Chavez," signed up for benefits under the Plan, and then hanged himself, was not, in fact, Juan Chavez. Juan Chavez is alive in California. Instead, the employee known to Tur-Pak as Juan Chavez was Orlando Garcia, the plaintiff's son. Garcia was an illegal alien who used false identification documents belonging to Chavez, an Hispanic male of about his same age, to work in the United

---

[4]The court is particularly troubled by the assertion of Great-West's in-house counsel in her letter denying the plaintiff's appeal stating, "We also compared a photograph of Orlando Garcia, with the date of birth of January 18, 1980, to a photograph of the Juan Chavez who was employed with Tur-Pak Foods. As you can see, the photographs are not of the same person." This directly contradicts the conclusion reached by the senior claims examiner that the pictures "were similar enough to indicate this is the same person."

14

States. When Garcia went to work for Tur-Pak, he used Chavez's date of birth and Social Security Number for the paperwork, but when he designated a beneficiary for his life insurance benefits, he named his father. On the insurance paperwork, he identified his father as his "friend" rather than his father because he was using the name "Chavez" to work, and his father's name was Garcia. He did not state his true relationship to his father on the paperwork because if he had done so, it would have been evidence that he was working under a false identity.

The claim representatives at Great-West did not really dispute this interpretation of the evidence when the claim first was submitted. Both the senior claims manager handling the claim and the assistant manager of Group Life Claims agreed Chavez and Garcia were the same person, Garcia had died, and the claim should be paid. When the Human Resources officer with Tur-Pak refused to provide Great-West with an affidavit, and indicated he would rather Great-West deny the claim because he was "afraid it might set a precedent with workers when a family member dies," Great-West immediately, without considering any further evidence and without any reasonable justification, changed its position and decided to deny the claim.

The court finds Great-West abused its discretion when it denied the plaintiff's claim. From the facts in the administrative file, no reasonable person could have reached a similar decision. The decision was not supported by substantial evidence, but instead, was reached at the behest of the employer to avoid setting a "precedent."

## II. CONCLUSION

The court **denies** the defendants' motion for summary judgment, **reverses** the decision of the plan administrator denying life insurance benefits to the plaintiff, and

**orders** the defendants to pay $15,000 in life insurance benefits under the Plan to the plaintiff. Judgment will be entered in favor of the plaintiff and against the defendants.

**IT IS SO ORDERED.**

**DATED** this 1st day of December, 2005.

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT